Case on the dot, 2-8-7-0-1-2-0, the people of the state of Illinois, which is at the lead, the Clinton-Cornyn-Moore Defendant and Counselor. Arguing on behalf of the Defendant and Counselor, Mr. Christopher R. Bendick. Arguing on behalf of the Clintons at the lead, Mr. Stephen K. Barnett. Mr. Bendick, for Bendick. Are you closer to your home here or down in the First District? You know, it's about the same. I'm in Downers Grove, so it's about a 45-minute trip. Took a little longer to get in. Good old 355. Any relationship to Leah Bendick? She is my spouse. Oh. So, yes. She was down in Springfield yesterday, so yes. Do you have any questions? You may proceed. May it please the Court, good morning, Your Honors, Counsel. My name is Chris Bendick from the Office of the State Appellate Defender, and I represent the appellant, Quinton Moore. Quinton Moore has been in prison since November 7th, 2007, on a charge that does not state an offense. The trial court aired... There was a charge that stated the offense. It was amended during trial, correct? Correct. We had a valid charge pre-trial, during trial. That charge stated that Quinton Moore committed attempt murder or aggravated discharge of a firearm by shooting at Julian Ramos. The trial court aired when it allowed the state to amend the attempt murder and the aggravated discharge of the firearm charges to omit the name Julian Ramos, the originally charged named victim. Ramos' name was hardly brought up at trial. It was just briefly mentioned, wasn't it? It was informed. And it was... there was essentially no evidence at trial that the person that was shot at was Julian Ramos. Well, the panel mentioned it in its testimony, didn't they? That it was... Ramos was spotted. Of course, he had no knowledge that it was actually Julian Ramos that was... But he was just sharing the information that was passed on to him inside the vehicle, correct? I'd have to... There were four people in the vehicle, including the informant who was taping the conversation. Correct. There was Hernandez, Montez, Moore, and Pannell. And there's no question the state could have amended the indictment to just say, or another, correct? Would you agree the state could have amended it to say Julian Ramos or another? Because that's what the... that's what first-degree murder says, that individual or another. So an attempt to first-degree murder, which is a specific intent crime, you can say that individual or another, and you'd still be guilty, if there was a verdict, you'd still be guilty of attempt to first-degree murder, correct? If you had an actual named victim in the... Or another, because that's what murder says, correct? That's the murder statute. The murder statute says an individual or another, so that would seem to suggest that it would have been appropriate. So what's the prejudice to just say, or another? Well, again, it's not adding on just simply the phrase, or another. It's striking any named victim, and for nearly 200 years, the Illinois courts have said, no, when you have an offense against a person, you have to have a named victim. But have you ever seen... this is a case of first impression, isn't it? There's never... did you find a case where there was a mid-trial amendment striking the name of the victim? No, because for 200 years, the Illinois courts have said, you can't do that. They've said, you have to have a named victim for an offense against a person. The trial judge asked counsel, and counsel had time, asked counsel, come up with a case, and now deny the amendment, correct? Essentially, I'm paraphrasing, but that's what the trial court said, correct? The court said, I'm granting the motion, come back, we're going to pass until tomorrow. I believe an argument was going to be held the next day, and said, if you can come up with some case. Now, what counsel should have come up with was people be Benitez. People be Benitez makes it clear. When the state... we learned mid-trial that there's a deficiency in the indictment, which we learn here because of the amendment by the trial court allowing the named victim to be admitted. We know that you have to, be end of mark, be people. Absolutely clear from the 1870s, you have to have a named victim for attempted murder. How about the aggravated discharge? You don't need a named victim for aggravated discharge, do you? I disagree with that. It's a general intent crime, isn't it? It's also an offense against the person. It is a specific person, as opposed to reckless discharge, which is an offense against the society. And that's what Collins says. What about reckless discharge? Could we, on our own authority, under 615B3, reduce the charge, reduce the conviction to reckless discharge? No, Your Honor, because a motion for directed finding would have been granted had the trial court not allowed the amendment. There was no evidence that Julian Ramos was shot at. There simply was none in the record. The state has not pointed to anything in the briefs. Do we know how this case got to the second stage of the post-conviction proceedings? Did the trial court rule with respect, neglect to rule at all and pass the 90-day time frame or time limit? Or did the court make a determination with regard to the merits, so to speak? The record is less than clear on that, Your Honor. What we do have, it seems that it's a 90-day violation. We don't have an affirmative ruling by the trial court that, hey, this is a gist of a constitutional claim. I'm advancing it past the second stage. I don't think that matters in this case. I mean, we would be under Keener if it did advance on a gist of a constitutional claim. But if not, we're under? We're under Greer and Combs, and this court's precedent. I'm sorry. Hypothetically, if the state had gone forward and they were trying to block the defense of arguing that you didn't see Ramos, therefore they haven't proven, correct, they haven't proven their case because you didn't see the intended victim, that was basically their argument. That's why they amended the indictment, correct? They realized they didn't present any evidence that Julian Ramos was the person that was shot. In actuality, they could have asked for an impossibility instruction or a mistake instruction, and they could have made exactly the same arguments that they made, that it doesn't matter. It doesn't matter because the fact that it would have been impossible, even if it was some other person, as long as there was an intent to shoot at Ramos, the defendant's guilty, correct? Impossibility's not a defense, is it? It's not. However, in order to prove the charged offense where Julian Ramos is the named victim, especially on what we know from this case, they needed to have Julian Ramos come in. That's not true. They could have absent some witness saying, we saw Julian Ramos get shot at, or some evidence from a co-defendant saying, hey, I shot him. I know you've heard of victimless prosecutions before, haven't you? Yes. Yeah, they're presented all the time. You have to just show there's another person that there was here by accountability that the person who was shot at was identified as this specific individual, and whether or not it turns out to be that individual or someone else under the attempted murder case law and IPI instructions, impossibility or mistake would not be a defense. However, in your case, there's not a known named victim. The case law is extremely specific on this. I'm not talking about naming the individual in the indictment. I know you are 100% correct in what Espinoza says in the history of the case law, but the State's indictment, they didn't need to amend the indictment to prove their case, even without Ramos, because if there was some other individual that's seen, they shooted him thinking it's Ramos. It doesn't matter if it's Ramos or not, because impossibility is not a defense to the charge of attempt because of the misapprehension of circumstances that would have been impossible to commit the offense attempted. That's IPI instruction 606, so the State could have made exactly the same argument without the amendment. If they had gone and either before trial amended the indictment to... Or answered that instruction during the jury instruction conference. But that's not what they did here. I know. The point is that the defendant was properly charged by indictment with a specific offense. Was there any argument that it was some other individual? That the person intended to be shot at was some other individual? Well, there was no evidence as to the identity of the person whatsoever. And so that's where our problem is and why there is no need for prejudice here to be shown under Benitez, because the State here... You made the argument at the first opportunity. That's your point, correct? As soon as the defense knew, the objection was made. Not only just then, but also the motion to reconsider essentially right before argument, post-trial. I mean, this has been brought to the circuit court's attention five times now, both at trial and in the post-conviction proceedings. The argument that was made, though, was that the mid-trial amendment was improper. It was never argued below that the charge did not state an offense. Are you saying in the post-conviction petition that... And also in the trial court, the post-trial motion and during arguments on the State's motion to amend, the argument was that there was a surprise. There was not the argument that the charge didn't state an offense. I disagree with that, Your Honor. The original argument by counsel was that you cannot have an attempted murder charge absent a named victim. The only reason we started getting on this train track of prejudice is because counsel did what a good counsel should do. He answered the judge's question, how are you prejudiced here? And, of course, he was prejudiced because a motion for directed finding would have been granted by the trial court absent this amendment because the offense specifically stated Julian Ramos. There was no evidence as to Julian Ramos at trial. It was the end of the State's case. The State wasn't saying, hey, you know, if we don't get this amendment, we'll subpoena Ramos in. Well, one, they misrepresented that they had subpoenaed Ramos. They didn't. They told that post-trial of we tried to get him in here. We asked him, but we knew he wasn't going to come in. We didn't subpoena him. They could have fixed this entire problem. Subpoena Ramos. How does double jeopardy, how is it satisfied if there is no name other than another? I would assume the word another relates to a bakery of anywhere from 1 to 10,000 people. And so how does the State prosecute the case in such a way that jeopardy will attach and this man won't be tried more than once if there is no name other than Mr. X or Ms. X or Mrs. X? If this is in a situation where we don't know that there is a named victim because if there is a named victim that we know about, the State has to charge that victim in the charging offense. Now, if you're talking about the situation where we don't know, then there must be some specific identifiers. By the time, the date of the offense. Date of the offense. And here, there's clear, the defendant's protected against double jeopardy, correct? I disagree because the charging offense does not include those. Well, the specifics of the offense itself, the recording, the testimony, there was only one shot fired. He could not be, you can specifically identify what incident you're referring to, correct? As the charging instrument states, it's an amorphous, nebulous term, another person. Who is this another person? Now, if this was a situation where, hey, we didn't know who the gang member was, who the, you know, insane deuce was, and the State charges this properly, having said Hispanic, wearing whatever X color, something along that. Shot at a group of people. With enough identifiers as opposed to the, as we can all agree, nebulous term, another person. Did I answer your question, Your Honor? Well enough. So was there merit to this issue with regard to the amendment? And did post-conviction counsel ascertain this claim? And if so, was it mentioned or was it acknowledged at any point by post-conviction counsel? And did it have to be? That's about four or five questions all together, but I think for me that's the gist of the issues here. Well, you know, the problem with post-conviction counsel's representation and her two motions to withdraw is neither motion even touches upon this. Right. You know, everyone below didn't touch upon this. The State's motion to dismiss doesn't mention it. The circuit court's granting of it, State motion to dismiss, doesn't mention it. I mean, it seems like this dropped off the radar. And, you know, post-conviction counsel's motion to withdraw here was obviously not satisfactory under a keener because it doesn't address all the issues. Well, maybe there was no merit to it. I mean, Justice Burkett was asking a lot of questions about this. I mean, maybe, you know, if there's no merit to it, maybe it didn't have to be mentioned by post-conviction counsel in this situation. It, at a minimum, has the gist of a constitutional claim, which this Court in Marlin-Johnson stated was sufficient for a remand for second-stage proceedings because the motion withdrawal was insufficient. We obviously think there's much more than the gist of a constitutional claim. We think there's enough here for simply reversing his conviction outright. But, at a minimum, this needs to go back for further second-stage proceedings and appointment of new counsel because— An appropriate 651C certificate. That would be the starting point, correct? It would start with the appointment of new counsel. Why new counsel? Well, that is a typical relief granted in a situation— But it's not always. In a situation with a deficient career motion, may— Finish your question. The deficient career motion, we know here that she's had two bites of the apple already to even touch upon this claim. I mean, I don't know why she doesn't want to touch upon this claim. You can surmise why she doesn't. But we know her representation was deficient. In the typical situation, it's remanded for new counsel and for that counsel to review the petition to determine what needs to be added, what doesn't, file certificate, and we continue on to state motion to dismiss. If Your Honors have no further questions, we ask for a reversal of Quentin Moore's conviction under the first issue or the alternative remedies in that issue. If the court does not grant relief on the first issue, we ask for a remand for further second-stage proceedings or appointment of counsel. Thank you. If you'll have an opportunity to make your vote. Thank you, Your Honors. Mr. Rogers? Good morning, Your Honors. Counsel, may it please the court. My name is Stephen Rogers, and I represent the people of the state of Illinois. Your Honors, the first thing to do is look at how this was raised currently, and that is as an ineffective assistance of appellate counsel claim. And what the Supreme Court and People v. English say to do is look at what the law was at the time the direct appeal occurred, which was 2010. Of course, Espinoza was not decided, although Espinoza relies on older cases, namely People v. Walker, which was a burglary case where the Supreme Court held that you needed to allege ownership of property. That ruling was undermined in 1982 by the Illinois Supreme Court, and now in a burglary offense you don't have to allege ownership of property or approve it at trial. Espinoza also relied on an amendment to 725 ILCS 5-111-3, which occurred in 2014, which was also not available to direct appeal counsel. And finally, we look at the flip side. You have a case, People v. Malone, which says the victim's identity is not an essential element of an attempted murder. So I think going to a lot of what Justice Burkett just mentioned is if the indictment had been left as it was and the jury instruction still would have been given, the jury would have found the defendant guilty of attempted murder, just the same as when the indictment was amended. Malone involved a jury instruction issue, not a charging issue. Yes, Your Honor. So isn't that a significant difference? Well, there is a difference, Your Honor. The court did not say in Malone that the name of the individual is not an essential element. It said the jury instructions were not improper. Yes, Your Honor. Well, I think the specific phrase is the victim's identity is not an essential element of attempted murder. Now, in that case, they do mention two named victims. And the court commented that it's not likely that there was any error or mistake by the jury, correct? Yes, Your Honor. Well, I think what often happens in these cases, there are multiple victims. But here, isn't it extremely likely that the jury misunderstood because there was maybe a scintilla of evidence that it was Ramos? How many people testified that it was Ramos? To be quite honest, Your Honor, I don't think anyone testified specifically that it was Julian Ramos. It was just there was like one reference to him in the entire case other than argument, and argument's not evidence, correct? Yes, Your Honor. So why wasn't the defendant prejudiced by that amendment? Well, because the state had to prove that he shot at an individual. And the state did prove that. Ramos was who they named in the indictment and then argued that it didn't matter. Yes, Your Honor. And the timing of it does raise concerns. It's hard to tell based on the record, but an appellate counsel missed those concerns altogether. And that's the argument that, you know, appointed counsel in a post-conviction petition should have noticed there was a big mistake that was made at trial, or at least an argument that there was a mistake that was made, an error that occurred at trial, and didn't bring it up in their brief. Yes, Your Honor. So why would we not send it back? Well, Your Honor, I guess there's a middle ground. If you find that there's potential merit to the claim and that it could be more fleshed out at the trial court, then we don't know what the testimony of appellate counsel would be. We don't know what the evidence would be at a third-stage hearing, correct? Yes, Your Honor. And in looking at a lot of ineffective assistance of appellate counsel claims, I don't know how often they have appellate counsel come in. That may be vital to explain what the reasoning was. Well, I know from my own experience on this court that defense counsel, trial counsel routinely are called and submit affidavits for both sides. Absolutely, Your Honor. Yes, very frequently with trial counsel where often there's a question of strategy. If there was some underlying reason why, you know, a piece of evidence wasn't brought out, I don't know how often it occurs with appellate counsel where it's pretty much illegal. It was either meritorious or not. What identifying factors in the indictment would satisfy the issue of jeopardy? Your Honor, there was the date, there was the defendant, and the description that he shot at another person. And often the cases, I know people versus Gilmore, Illinois Supreme Court case, they say afterwards you can often resort to the record to establish or to preclude a future conviction or prosecution for the same offense. And here the evidence could not have been clearer that these four Latin kings shot at what they suspected was an insane deuce member. This court on direct appeal found that the evidence was overwhelming. The state had proved their case. And this court described the intended victim as part of a rival gang. The trial court described him as a rival guy. I mean, this was never a case where the four Latin kings knew who this individual was. It was that they were out doing their duties for the gang and shooting at other individuals. If we were to find that the amendment basically nullified the charge because it no longer stated an offense, could the defendant be retried? Your Honor, if he is... He went to trial on a proper charge and then it's almost as if the state nally-crossed that original charge mid-trial. Well, Your Honor, if this court were to hold that Espinoza applies directly to attempt cases, that that law was so clear in 2010 that appellate counsel's determination of the merits was patently wrong, and that the state in the attempt murder must allege and prove the identity, so the name of the victim, not that there was a victim, but the specific name, then the state presented insufficient evidence because I don't believe that the state had testimony that this victim was Julian Ramos, which is why the state amended at the end of his case. I don't believe Blake Payne will ever testify. This is not a situation where the state did not know who the other individual was, correct? They didn't know and they named him. Yes, sir. And, you know, Espinoza's not limited to... It's not limited. The language applies to any crime against the person. Would you agree? If a person is shot at and a bullet strikes them, that's still an attempt murder regardless of whether or not... It's still a crime against the person, correct? Yes, sir. Espinoza's not limited. It doesn't exclude attempt cases, does it? It doesn't by its express terms exclude attempt cases. It didn't deal with any attempt. Both of the charges in that case would have required the state to prove in the jury instruction the identity of the victim. The trial court kept saying there's no prejudice that's been shown, but the defendant raised the issue at his first opportunity. So under the case law, he's not required to show prejudice, is he? Well, yes, Your Honor. The timing, yeah, I couldn't argue that he raised it too late. So he's not required to show prejudice, correct? Well, Your Honor, it depends on how it was raised. If it was raised as the timing was prejudicial because the state had brought up Julian Ramos in opening statements, then I think the defendant would still have to prove prejudice. If the defendant challenged... He challenged the amendment, amending the charge at his first opportunity. Yes, Your Honor. But if the defendant only... If the defendant challenged the sufficiency of the indictment, then he would not have to prove prejudice. However, if he only challenged the prejudice that came along with the timing, because the defense counsel made multiple statements that this could have been proper pretrial, and if that's the case, then I don't believe he was challenging the sufficiency of the indictment as opposed to challenging the state making comments in opening and then removing the victim's name. If the name of the victim is required and there's no evidence up to the time of the amendment that Mr. Ramos was the alleged victim, why would he... Why would the defendant object to anything because the case is going his way? Well, he wouldn't object in front of the jury. I may not be understanding... His intent was to file a motion for directed verdict. Is that the point? That was the... That's where he was going to go. I'm trying to figure out how the procedural aspect of this case is such that he would say anything relative to the charge, the amendment of the charge, because it would appear that the state hadn't proved its prima facie case yet. So, as Justice Burkett said, the first time that he objected was when it appeared that maybe the sinking ship had its hull plugged and maybe it's going to be refloated or at least not sink. So, if it's going along and it's going to be a catastrophe and then all of a sudden something happens to which he objects, which resolves the catastrophe, and if he were granted the relief he sought, the catastrophe would have rendered a verdict of not guilty, doesn't that sound like it's close to being prejudicial? Because it would change the outcome of the verdict? Your Honor, so he should not have moved to dismiss the indictment at that point? I'm saying... No, I didn't say anything about the indictment. I'm saying that the case wasn't proven up until the time, supposedly, when they were going to redact the name of the victim. And so if supposedly the resolution such that a verdict of guilty could be given or rendered took place at the time the amendment was made and prior to that it was a catastrophe for the state, then doesn't that logically suggest that if it's a catastrophe up to that point in time that he's prejudiced, supposedly what happens after the amendment renders a verdict against him, that between what happened before the amendment versus what happened after the amendment is the difference between a guilty and a not guilty? Yes, Your Honor, so basically... Or a dismissal. Yes, Your Honor, so the state lessened its burden of proof by removing the name, whereas it didn't prove its case and then without the name it did prove its case. Well, yes, Your Honor, in that sense it's prejudicial. In Espinosa, and Espinosa was based on court said, it's settled law. Yes, Your Honor. The term, if known, at the end of the case could the argument be made that the state no longer knew who it was because Ramos didn't show up? Is that why they amended? They did name Ramos. Yes, Your Honor. And then they removed Ramos. Yes, Your Honor. Who shares the blame for not producing Ramos? Well, Your Honor, the state has to... The state burdened the witness. And they didn't, they acknowledged it, they didn't even subpoena him for this trial. Yes, Your Honor, they had subpoenaed him for multiple trial dates leading up to it and I believe sometime within a couple weeks prior to this trial, Ramos had said he was not going to participate. It was well set on the record pre-trial that he had been shot and that he was paralyzed in a wheelchair and he was afraid to come in. Yes, Your Honor. And we know, don't we, from the other cases that he was, that Ramos testified in the other cases? Yes, Your Honor. People versus Montez, he testified. So, and that's unfortunately what the state thought was that he would have a change of heart. He had said he wasn't going to come in. Does the state's thinking pre-trial that he might have a change of heart relieve the responsibility to produce a witness and subpoena a witness? No, Your Honor. They should have subpoenaed him. I don't know if they had gotten close to him or he had cooperated throughout pre-trial and once he said, I made the decision, I will not show up. If the state accepted that without the pressure of a subpoena, it was probably not the right thing to do. Well, then what's the right thing to do here if Espinoza applies and that precedent applies? What's the right thing to do? Well, Your Honor, if Espinoza applies outright to attempt and the state had to allege in the indictment and prove at trial that Julian Ramos was the victim of this attempt murder, the state didn't do it. So, now the way this is framed now is ineffective assistance of appellate counsel. So, we have to look at what appellate counsel knew or should have known in 2010. If this Court thinks that the law was so clear prior to 2010 and that direct appeal counsel was ineffective then, I'm not sure what else we would do at that point. It could be remanded to litigate the ineffective assistance of appellate counsel claim more thoroughly. Maybe there would be testimony. Your Honor, you see the logic that says that if we determine that appellate counsel was ineffective because he should have raised this, because it dehydrated that he would have been successful and reversal would have occurred, then doesn't it appear that we can enter any order that the trial court could and we should reverse the case as well? Your Honor, this Court does have the power, I believe, to reverse. It has done so in cases, I think, within the last couple of weeks. So, that is within the realm of what this Court could do. Well, my point is in the analysis as to whether or not counsel was ineffective, the analysis establishes reversible error to the extent that the defendant is discharged. We do have the ability to enter that order, do we not, if that is the scenario? Yes, Your Honor. Thank you. With regard to the argument counsel was making, you have made questions about the impossibility instruction and mistake. Why didn't the State just ask for those instructions instead of amending the indictment and making the argument it doesn't matter who they shot at, if it was Julian Ramos or some other person that they mistakenly thought was Ramos? To be quite honest, Your Honor, I... They could have made the identical argument that they made had they sought that instruction, could they not? Yes, Your Honor. And to be quite honest, I'm not sure why the State didn't go that route. So, this is a unique set of facts. The State did bring in charge, tried the defendant on the charge of shooting at Ramos and then removed the name at the end of the trial. And there was no other evidence? There was no evidence. A short witness after that? Or was there additional evidence? Your Honor, I believe... I believe what happened was the defense presented its case earlier because it was the same witness. They wanted to get in some evidence to a State witness. I don't believe they presented anything after the State arrested them. Do you agree this is a Greer situation? A what? Greer situation. Yes, Your Honor. There's at least nothing on the record. I re-read Combs this morning, and it seems that typically you're going to get something on the record where a judge has made a determination within 90 days. And it just didn't happen there. So, if a judge had made a determination, it's not on the record. There's no order. There typically would be an order. Yes, Your Honor. We're going to move this to the second stage and appoint counsel. So, under Combs, then, if the amendment error claim or argument had merit, then it wouldn't have had to have been mentioned in the motion to withdraw by counsel moving to withdraw. But if it didn't have merit, then it would have had to be mentioned. In other words, all claims have to be mentioned unless there's no merit. Well, Your Honor, I think under Koehner, because in Koehner the case has been moved based on affirmative determination. Yes, right. Yes, Your Honor. And there the post-conviction counsel has to go through each and every claim and explain why it's frivolous or patent without merit. Whereas under Greer, the Supreme Court said the post-conviction counsel must make some effort to explain. And post-conviction counsel did not address this particular claim but addressed a number of other claims and I think otherwise complied with 651C. There are numerous states where she states, I met, consulted in person with the defendant. And then also she read the entire record. And so if the claim is without merit, then it was properly dismissed and her motion to withdraw was properly allowed. Now, if it had merit, then she should not have withdrawn. And so really everything funnels through whether the underlying claim has merit.  Thank you, Your Honor. Thank you. Mr. Bendick. Just briefly, Your Honors. In regards to opposing counsel's People v. English argument, Vandermark settles that. I mean, this has been settled law for 170 years that a named victim for an offense against a person directed appeal counsel was ineffective when she failed to raise this fully preserved and meritorious issue. The name of the victim in an attempt murder case is not surplusage, correct? Absolutely not. And People v. Kessler, this court in 1975, addressed this exact question. The allegation that defendant with the requisite intent attempted to kill and murder unnamed victim was sufficient to describe an act which constituted a substantial step toward the commission of the murder. They didn't do that here. The trial court erred, direct appeal counsel erred by not bringing this up. And I think opposing counsel admits that he cannot be retried on this offense if this court grants relief and reverses his conviction. That's what the relief we are asking for from this court. If there are no further questions from this court, we ask for that relief. And the alternative, we ask for the relief pursuant to the second issue as to opposing conviction counsel's deficient career motion. I have no questions. Thank you. We'll take a recess. There are other cases on the call.